## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

### CASE NO.: 25-cv-3246

MALWATTIE MANGAL PERSAUD,
an individual,

       Plaintiff,

v.

LARAMIE AUTO SALES, INC.,
a Florida corporation,

       Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, Malwattie Mangal Persaud ("Ms. Persaud"), sues Defendant, Laramie Auto Sales, Inc., a Florida corporation ("Laramie Auto" or "Dealership"), and alleges:

### INTRODUCTION

### *Synopsis of Proceeding*

1. As detailed below, the Dealership sold a working family a used SUV using a handcrafted finance agreement that charged an annual percentage rate of more than 181%. To create the predatory extension of credit, the Dealership concealed the terms of financing by using a loan agreement that did not provide any meaningful disclosure of the terms of the extension of credit under federal or state consumer finance laws.

2.      Subsequently, the Dealership repossessed the SUV without cause or justification and then asserted the right to bogus, made-up and unconscionable fees before returning the SUV to Plaintiff. Despite having paid far more than the agreed price for the SUV, Defendant still retains the title and continues to seek more money from Plaintiff.

3.      The practices of the Dealership give rise to claims for *inter alia* violation of federal and state consumer protection laws, including the Federal Truth in Lending Act ("TILA"), the Florida Motor Vehicle Retail Sales Finance Act ("FMVRSFA"), the Florida Unfair and Deceptive Trade Practices Act ("DUTPA"), the Uniform Commercial Code ("UCC"), and the Florida Consumer Collection Practices Act ("FCCPA").

## JURISDICTION

4.      The jurisdiction of this Court is established pursuant to the Federal Truth in Lending Act, 15 U.S.C §1640, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C.§1367.

## ALLEGATIONS AS TO PARTIES

5.      At all times material hereto, Ms. Persaud was *sui juris* and a resident of Polk County, Florida.

6.      At all times material hereto, Laramie Auto was a Florida corporation doing business at 1013 S. Combee Road, Lakeland, Florida 33801.

7.    All acts and omissions of the employees, agents, or representatives of Laramie Auto as described below were within the actual, apparent or implied authority of Laramie Auto or were subsequently ratified or affirmed by Laramie Auto.

8.    At all times material hereto, Laramie Auto was a "dealer" as said term is defined under 49 U.S.C. §132702(2) and a "transferor" as said term is defined under 49 C.F.R. §590.3.

9.    At all times material hereto, Laramie Auto was a "dealer" as said term is defined under Fla. Stat. §520.77(a).

10.    At all times material hereto, Laramie Auto was a "motor vehicle retail installment seller" or "seller" as said terms are defined under Fla. Stat. §520.02(11).

## FACTUAL ALLEGATIONS

### A.  Ms. Persaud purchases and finances an old SUV.

11.    In mid-December 2024, Ms. Persaud needed reliable but cheap transportation for her family's personal and household purposes.

12.    On December 13, 2024, Ms. Persaud agreed to purchase a 2012 Nissan Rogue, VIN JN8A55MV3CW408998 ("Nissan Rogue") from Laramie Auto for a cash price (without sales tax, add-ons and tags and registration) of  Five Thousand Dollars ($5,000.00) ("Sales Price").

13.    As part of the transaction to purchase and finance the Nissan Rogue, Ms. Persaud paid Six Hundred Dollars ($600.00) as and for a down payment ("Down Payment") for the Nissan Rogue leaving an amount owed of Five Thousand Six Hundred and Five Dollars ($5,605.00) ("Amount Financed").

14.    In addition to the Down Payment, the Dealership requested that Ms. Persaud sign various papers to purchase and finance the Nissan Rogue ("Purchase and Finance Documents").

15.    As part of the Purchase and Finance Documents, Ms. Persaud executed and delivered to the Dealership a document known more commonly in the automobile sales industry as a "retail installment sales contract" ("RISC") to finance the purchase of the Nissan Rogue. A copy of the RISC is attached hereto and incorporated by reference as Exhibit "A."

**B.  Through its predatory terms, the loan agreement acts as a debt trap.**

*1. The loan imposes a predatory and usurious finance charge.*

16.    Pursuant to the RISC, the Dealership claimed the right to a "28% finance charge" of One Thousand Five Hundred Sixty-Nine Dollars ($1,569.00) ("Finance Charge"):

17.    Pursuant to the RISC, Ms. Persaud was required to pay a total balance owed of Seven Thousand One Hundred Seventy-Four Dollars ($7,174.00) within ninety (90) days.

18.    While the form of the RISC had a place for the insertion of the commencement date and the amount of the installment payments to the Dealership, the spaces were left blank.

19.    Under TILA, the disclosed percentage rate was utterly and completely wrong. **The actual annual percentage rate was more than 181%.**

   *2.    The loan imposes impermissible late fees.*

20.    Fla. Stat. §520.07(6), FMVRSFA, provides in pertinent part:

   (6)    The holder may, if the contract or refinancing agreement so provides, collect a delinquency and collection charge on each installment in default for a period not less than 10 days in an amount not in excess of 5 percent of each installment.

21.    Pursuant to the RISC, the Dealership asserted a right to recover a $25.00 late fee **per week**;



Late Payment Policy: There will be a $25 late fee charged, per week, if payment is not received upon due date.

                                                    ("Late Fee Provision")

22.    The Late Fee Provision reserved the right to assess late fees in manner not authorized by the FMVRSFA.

*3.   The loan imposes impressible junk dealer fees.*

23.   Fla. Stat. §501.976(18), DUTPA, provides in pertinent part that a dealer may not:

> Charge a customer for any predelivery service without having printed on all documents that include a line item for predelivery service the following disclosure: "This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale."

24.   Through the RISC, the Dealership charged Three Hundred and Fifty Dollars ($350.00) as a "Dealer Prep" fee ("Dealer Prep Fee").

25.   The RISC did not provide the disclosures mandated by Fla. Stat. §501.976(18)

26.   At the time of the sale of the Nissan Rogue through the date of the filing hereof, the Dealership did not advertise that the price of its cars did not include a Dealer Prep Fee. *See, https://laramieautosale.com* (last accessed on 11-22-25).

### C.  The Dealership wrongfully repossesses the SUV.

*1.   The Dealership grabs the SUV without warning or notice.*

27.   After signing the Purchase and Finance Documents, Ms. Persaud left the Dealership with the Nissan Rogue to be used as transportation for her family.

28.   As the RISC did not provide a due date or amount for the installment payments to the Dealership, Ms. Persaud made payments to the Dealership on a periodic basis when she could and whenever asked by the Dealership.

29.     On March 31, 2025, Ms. Persaud delivered a check for the balance of the Purchase Price in the amount of $3,105.00 ("Check Payment").

30.     As the result of an inadvertent banking error on the part of Ms. Persaud with respect to the availability of funds in her bank account, the Check Payment failed.

31.     Shortly after the Check Payment failed, Laramie Auto repossessed the Nissan Rogue without notice to Ms. Persaud.

2. *The Dealership returns the SUV and requires Ms. Persuad to continue payment.*

32.     After Ms. Persaud explained to the Dealership that she had made a honest mistake in banking, the Dealership agreed to return the Nissan Rogue.

33.     Before returning the Nissan Rogue, the Dealership demanded that Ms. Persaud pay One Thousand Dollars ($1,000.00).

34.     In addition, the Dealership charged Ms. Persaud Six Hundred Seventy-Five Dollars ($675.00) as a "repossession fee" ("Repossession Fee").

35.     By information and belief, the Repossession Fee was not in fact incurred by Laramie Auto and was an impermissible charge against Ms. Persaud.

36.     After Ms. Persaud paid the monies demanded, the Nissan Rogue was returned to Ms. Persaud.

37.    At the time of the repossession of the Nissan Rogue, Ms. Persaud had $400.00 cash in her wallet ("Wallet Cash").

38.    Not unexpectedly, the Wallet Cash had been purloined when the Nissan Rogue was in the possession and control of the Dealership.

39.    After recovering her SUV, Ms. Persaud continued to make payments to Laramie Auto even though she had paid more than the Purchase Price for the SUV.

40.    According to the calculations of Ms. Persaud, Ms. Persaud has paid Eight Thousand Four Hundred Fifty-Five Dollars ($8,455.00) to Laramie Auto under the Purchase and Finance Documents.

   *D.  Even though the SUV has been paid for, the Dealership will not release Ms. Persaud from the debt trap of the RISC.*

41.    Despite the payment of all monies owed to the Dealership, the Dealership continued to pursue Ms. Persaud for additional monies.

42.    The collection efforts of Laramie Auto included repeated text messages from an employee named "Gabrielle" to Ms. Persaud where Laramie Auto:

- asserted the right to charge a bogus and wholly made-up late fee of $1,000:



("Faux Late Fee Threats"); and

• threatened Ms. Persaud with mischief:



("Game Threat").

43.     Frustrated by the continued pursuit by Laramie Auto and fearful of the threats, Ms. Persaud retained counsel, Robert W. Murphy, Esq. ("Attorney Murphy"), to obtain information concerning the monies purportedly owed by Ms. Persaud.

44.     On April 30, 3025, Attorney Murphy sent or caused to be sent to Laramie Auto a statutory demand letter under Fla. Stat. §529.07 ("Estoppel Demand").

45.     A copy of the Estoppel Demand with certified mail return receipt is attached hereto as Exhibit "B."

46.     Despite delivery of the Estoppel Demand, Laramie Auto failed to respond or provide the requested records, including an estoppel statement.

47.     Notwithstanding knowledge of Ms. Persaud's representation by Attorney Murphy, Laramie Auto nonetheless continued to communicate directly with Ms. Persaud in an attempt to collect monies claimed to be owed under the RISC.

48.     The collection efforts of Laramie Auto included coming to the home of Ms. Persaud on July 16, 2025, and leaving disturbing hand-written notes as shown in the following images:





(Remainder of page left intentionally blank)



## COUNT I - ACTION FOR VIOLATION OF
## THE TRUTH IN LENDING ACT

49.     This is a claim for violation of the Truth in Lending Act, 15 U.S.C.

§1601, *et seq.* ("TILA"), and the regulations promulgated thereunder.

50.     Ms. Persaud realleges and reaffirms the allegations contained in

Paragraphs 1 through 48 above as if set forth hereat in full.

51.     The Dealership violated the TILA and Regulation Z with respect to the financing of the Nissan Rogue by failing to properly deliver all material disclosures as required by the TILA and Regulation Z, including the following:

(a)     by failing to disclose accurately and properly the finance charge, in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z, 12 CFR §§226.18(d) and 226.14;

(b)     by failing to disclose accurately and properly the amount financed in violation of 15 U.S.C. §1638(a)(2) and Regulation Z, 12 CFR §226.18(b); and

(c)     by failing to disclose accurately and properly the "annual percentage rate",   in violation of 15 U.S.C. §1638(a)(4) and Regulation Z, 12 CFR §226.18(e).

52.     By reason of the aforesaid violations of TILA and Regulation Z, the Dealership is liable to Ms. Persaud for actual and statutory damages, including, but not necessarily limited to, twice the finance charge pursuant to 15 U.S.C. §1640(a).

53.     Pursuant to 15 U.S.C. §1640, Ms. Persaud is entitled to recover reasonable attorney's fees to be determined by the Court.

54.     Ms. Persaud has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Malwattie Mangal Persaud, demands judgment against Defendant, Laramie Auto Sales, Inc., a Florida corporation, for:

A.    Actual damages pursuant to 15 U.S.C. §1640(a)(1);

B.    Statutory damages in the amount of twice the finance charge pursuant to 15 U.S.C. §1640(a)(2);

C.    Reasonable costs and reasonable attorney's fees in accordance with 15 U.S.C. §1640; and

D.    Such other and further relief as justice may require.

## COUNT II - ACTION FOR VIOLATION OF THE FLORIDA MOTOR VEHICLE RETAIL SALES FINANCE ACT

55.    This is a claim for violation of the Florida Motor Vehicle Retail Sales Finance Act ("FMVRSFA"), Florida Statute §520.01, *et seq.,* brought herein pursuant to the pendent jurisdiction of the Court.

56.    Ms. Persaud realleges and reaffirms the allegations contained in Paragraphs 1 through 48 above as if set forth hereat in full.

57    At all times material hereto, Ms. Persaud was a "retail buyer" or "buyer" as said terms are defined under Fla. Stat. §520.02(16).

58.    At all times material hereto, the Nissan Rogue was a "motor vehicle as said term is defined under Fla. Stat. §520.02(11).

59.    At all times material hereto, the RISC was a "retail installment contract" or "contract" as said terms are defined under Fla. Stat.  §520.02(17).

60.    At all times material hereto, the purchase of the Nissan Rogue was a retail installment transaction as said term is defined under Fla. Stat. §520.02(18).

61.    As more particularly described above, the Dealership violated the Florida Motor Vehicle Retail Sales Finance Act:

(a)  by failing to provide the required consumer disclosures in the form and with the content mandated by Fla. Stat. §520.07;

(b)  by charging an unlawful finance charge in excess of that allowed by Fla. Stat. §520.08;

(c)  by charging a delinquency fee in excess of that allowed by Fla. Stat. §520.07(6);

(d)  by failing to provide upon written request from the buyer, a written statement of the dates and amounts of payments and the total amount unpaid under such contract as mandated by Fla. Stat. §520.07(8)(a); and

(e)  by failing to ensure that when the RISC had been paid by Persaud that the contract or title reflects that the lien was released and that evidence of satisfaction is provided to Ms. Persaud as a borrower or payor as mandated by Fla. Stat. §520.07(8)(b).

62.    At all times material hereto, the Dealership was engaged in the business of providing consumer loans to the public at large in Florida, and knowledgeable of the requirements with respect to the extension of credit subject to the Florida Motor

Vehicle Retail Sales Finance Act.  Accordingly, the above-described violations of the Florida Motor Vehicle Retail Sales Finance Act were willful in nature.

63.     As a direct and proximate result of the willful violation of the Florida Motor Vehicle Retail Sales Finance Act, Ms. Persaud is entitled to recover from the Dealership the amount equal to any finance charge under the RISC for each discrete violation, plus attorney's fees and court costs incurred by Ms. Persaud to assert her rights under Fla. Stat.§520.12(2).

64.     Ms. Persaud has employed the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Malwattie Mangal Persaud, demands judgment against Defendant, Laramie Auto Sales, Inc., a Florida corporation, for damages, together with interest, court costs and attorney's fees pursuant to Fla. Stat. §520.12(2).

## COUNT III - ACTION FOR VIOLATION OF
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

65.     This is an action for violation of Fla. Stat. §501.201, *et seq.,* known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" (the "DUTPA"), brought herein pursuant to the pendent jurisdiction of the Court.

66.     Ms. Persaud realleges and reaffirms the allegations contained in Paragraphs 1 through 48 above as if set forth hereat in full.

67.     At all times material hereto, Ms. Persaud was an "interested party or

person" as said term is defined under Fla. Stat. §501.203(6).

68    At all times material hereto, the Nissan Rogue was a "motor vehicle" and "used motor vehicle" as said terms are defined under Fla. Stat. §320.01(1) and §319.001(11), respectively.

69.    By virtue of the acts described above, the Dealership was engaged in "trade or commerce" as said term is defined under Fla. Stat. §501.203(8).

### *Violation of Florida Motor Vehicle Dealers Act*

70.    During the course of the sale and financing of the Nissan Rogue, the Dealership violated the requirements of Fla. Stat. Chapter 320, known more commonly as the "Florida Motor Vehicle Licenses Act," in the following respects:

A.    By misrepresenting or making false, deceptive, or misleading statements with regard to the sale of the Nissan Rogue in violation of Fla. Stat. §320.27(9)(b)3; and

B.    By perpetrating any fraud upon Ms. Persaud in connection with the sale of the Nissan Rogue in violation of Fla. Stat. §320.27(9)(b)13.

71.    The violation of the Florida Motor Vehicle License Act is a *per se* violation of the DUTPA pursuant to Fla. Stat. §501.211(3)(c).

### *Violation of DUTPA as to Dealership*

72.    Ms. Persaud was a "customer" as said term is defined under Florida Statute §501.975(1).

73.     The Dealership was a "dealer" as said term is defined under Fla. Stat. §501.975(2).

74.     The Nissan Rogue was a "vehicle" as said term is defined under Fla. Stat. §501.975(5).

75.     During the course of the sale and financing of the Nissan Rogue, the Dealership violated the requirements of the DUTPA by:

(a)     Obtaining signatures from a customer on contracts that are not fully completed at the time the customer signs or which do not reflect accurately the negotiations and agreement between the customer and the dealer in violation of Fla. Stat. §501.201(9);

(b)     Adding to the cash price of a vehicle as defined in Fla. Stat. § 520.02(2) any fee or charge other than those provided in that section and in rule 69V-50.001, Florida Administrative Code. in violation of Fla. Stat. §501.201(11); and

(c)      Advertising the price of a vehicle without including all fees or charges that the customer must pay in violation of Fla. Stat. §501.201 (16);

(d)     Charging a customer for any predelivery service without having printed on all documents that include a line item for predelivery service the following disclosure: "This charge represents costs and

profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale in violation of Fla. Stat. §501.201 (18).

        *                    *                    *

76.    As a direct and proximate result of the violation of the DUTPA, Ms. Persaud has been damaged and is an aggrieved person under the DUTPA.

77.    As more particularly described above, the Dealership has engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. §501.204(1).

78.    Pursuant to Fla. Stat. §501.211, Ms. Persaud is entitled to obtain a declaratory judgment due to the acts and practices of the Dealership under the DUTPA, and to enjoin the Dealership from further violations of the DUTPA.

80.    It is in the interest of the protection of consumers that the Dealership be prohibited and proscribed from further violations of the DUTPA, as described above.

81.    Ms. Persaud has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Malwattie Mangal Persaud, demands judgment against Defendant, Laramie Auto Sales, Inc., a Florida corporation, for:

A.    Declaratory relief against Defendant adjudicating that the actions of

Defendant, as described above, constitute a violation of the DUTPA; and

B.    Injunctive relief against Defendant prohibiting Defendant from further violations of the DUTPA, as described above; and

C.    Damages in an amount to be determined at trial; and

D.    Attorney's fees and court costs pursuant to Fla. Stat. §501.2105.

## COUNT IV– ACTION FOR VIOLATION OF THE UCC

82.    This is an action for violation of Fla. Stat. Chapter 679, Article 9, Part VI of the Uniform Commercial Code ("UCC"), brought herein pursuant to the pendent jurisdiction of the Court.

83.    Ms. Persaud realleges and reaffirms the allegations contained in paragraphs 1 through 48 above as if fully set forth herein.

84.    At all times material hereto, the Nissan Rogue was "collateral" as said term is defined under Fla. Stat. §679.1021(1)(l).

85.    At all times material hereto, Ms. Persaud was a "debtor" as said term is defined under Fla. Stat. §679.1021(1)(bb).

86.    At all times material hereto, the Nissan Rogue constituted "consumer goods" as said term is defined under Fla. Stat. §679.1021(1)(w).

87.    At all times material hereto, Laramie Auto was a "secured party" as said term is defined under Fla. Stat. §679.1021(1)(sss).

88.    Pursuant to Fla. Stat. §679.609(2)(b) provides, *inter alia*, that a secured

party such as Laramie Auto may take possession of collateral without judicial process, if it proceeds without breach of the peace.

89.    Pursuant to Fla. Stat. §679.610(2), every aspect of the repossession of collateral, including the method, manner, time, place, and other terms must be commercially reasonable.

90.    In *Hyundai Motor Credit Company v. Waters*, 273 So.2d 96 (Fla. 3rd DCA 1973), the lender repossessed a vehicle without notice.  In affirming an award of conversion damages for the buyer, the Florida Third District Court of Appeals held:

> The issue is the right of the buyer to rely upon the prior dealings that had taken place and the buyer's right to be notified of a modification of such conduct on the part of the appellant.  The facts before us adequately set up a pattern of conduct that would lead the appellee to believe that late payments would be accepted by the appellant and that he would be allowed to catch up in his payment arrears. Notification of a change in this pattern should have been given to appellee by appellant prior to the repossession of the automobile.

*Id*. at 100.

91.    Since *Waters*, lenders in Florida have been required to send out so-called "*Waters Notices*" to put borrowers on notice that a lender will require strict compliance.  Most jurisdictions around the country have also adopted this same general rule.  *See, e.g., Cobb v. Midwest Recovery*, 295 N.W.2d 232 (Minn. 1980); *Dunn v. Gen. Equities of Iowa, Ltd.,* 319 N.W.2d 515 (Iowa 1982); *Nev. Nat'l Bank*

*v. Huff,* 94 Nev. 506, 582 P.2d 364 (1978); *Slusser v. Wyrick,* 28 Ohio App.3rd 96, 502 N.E.2d 259 (1986); *Lee v. Wood Prods. Credit Union,* 275 Or. 445, 551 P.2d 446 (1976).

92.    The Dealership has violated the requirements of Florida Statute §679.609 by repossessing the Nissan Rogue in the absence of a notice of default when the circumstances and course of dealing between the parties would require such notice.

93.    The repossession of the Nissan Rogue was not commercially reasonable within the meaning of the UCC.

94.    As a direct and proximate result of the above-described acts, Laramie Auto is liable for all damages sustained by Ms. Persaud.

95.    Pursuant to Fla. Stat. §679.625(3)(b), Ms. Persaud has the right to recover actual damages or an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time-price differential plus 10% of the cash price.

96.    Pursuant to Fla. Stat. §57.105(7), when a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the Court may also allow reasonable attorney's fees to the other party when that party prevails in the action, whether as plaintiff or defendant, with respect to the contract.

97.    Pursuant to the RISC, the holder of the RISC has the right to recover

attorney's fees for any action taken to enforce the rights of the holder under the RISC upon default of Ms. Persaud.

98.    Ms. Persaud has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Malwattie Mangal Persaud, demands judgment against Defendant, Laramie Auto Sales, Inc., a Florida corporation, for damages, interest, costs, and attorney's fees pursuant to Fla. Stat. §57.105(7).

## COUNT V - ACTION FOR VIOLATION OF THE
## FLORIDA CONSUMER COLLECTION PRACTICES ACT

99.    This is an action for damages for violation of the Florida Consumer Collection Practices Act ("FCCPA"), brought herein pursuant to the pendent jurisdiction of the Court.

100.    Ms. Persaud realleges and reaffirms the allegations contained in Paragraphs 1 through 48 above as if set forth hereat in full.

101.    At all times material hereto, the obligation under the RISC constituted a "debt" or "consumer debt" as said terms are defined under Fla. Stat. §559.55(1).

102.    At all times material hereto, Ms. Persaud was a "debtor" or "consumer debtor" as said terms are defined under Fla. Stat. §559.55(2).

103.    At all times material hereto, Laramie Auto was a "creditor" as said term is defined under Fla. Stat. §559.55(3).

104.   At all times material hereto, Defendant was a "debt collector(s)" as said term is defined under Fla. Stat. §559.55(6).

105.   As more particularly described above, Defendant violated the FCCPA in that Defendant:

(1)   Willfully communicate with Ms. Persaud as a debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family in contravention of Fla. Stat. §559.72(7);

(2)   attempted or threatened to enforce a debt when Defendant knew that the debt was not legitimate or asserted the existence of a legal right when such person knows the right does not exist, in contravention of Fla. Stat. §559.72(9), and

(3)   Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address in contravention of Fla. Stat. §559.72(18).

100.   As a direct and proximate result of the violation of the FCCPA by the Defendant, Ms. Persaud has been damaged. The damages of Ms. Persaud include

but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation, and embarrassment.

106.    Ms. Persaud has retained the undersigned law firm to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

107.    Pursuant to Fla. Stat. §559.77, Ms. Persaud is entitled to recover actual and punitive damages together with statutory damages of $1,000.00, and reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff, Malwattie Mangal Persaud, demands judgment against Defendant, Laramie Auto Sales, Inc., a Florida corporation, for compensatory, statutory, and punitive damages, together with interest, costs and attorney's fees pursuant to Fla. Stat. §559.77.

## DEMAND FOR JURY TRIAL

Plaintiff, Malwattie Mangal Persaud, pursuant to Rule 38, Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No. 717223
440 Premier Circle, Suite 240
Charlottesville, VA 22901
T: (954) 763-8660
F: (954) 763-8607
rwmurphy@lawfirmmurphy.com